**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SUSAN D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25-cv-939-RHH |
| | ) | |
| | ) | |
| FRANK J. BISIGNANO, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Susan D.'s ("Plaintiff's") appeal regarding the denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 4.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court reverses and remands the Commissioner's decision.

**I. Background**

On or about April 26, 2023, Plaintiff applied for DIB, alleging she has been unable to work due to disability since April 12, 2023. (Tr. 139.) She later amended her alleged onset date to April 28, 2023. (Tr. 33.) Plaintiff alleged disability due to lumbar spine fusion at L4-5 and both SI joints, left SI joint fusion in January 2022, chronic pain with radiation into the right leg and up to the ribs, nerve root damage at L5-S1, stenosis, nerve pain, and muscle spasms. (Tr. 60.) Her application was initially denied and denied again on reconsideration. (Tr. 59-66, 67-74.) Then, she filed a

request for Hearing by Administrative Law Judge (ALJ). (Tr. 90-91.) On May 7, 2024, the ALJ held a hearing on Plaintiff's claim. (Tr. 30-58.) Plaintiff was represented by counsel at the hearing, and Plaintiff and an impartial vocational expert both testified. *Id.*

In a decision issued on July 25, 2024, the ALJ found Plaintiff was not disabled as defined in the Act from the alleged onset date through the date she was last insured. (Tr. 14-24.) On August 2, 2024, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 134-36.) On May 22, 2025, the Appeals Council denied Plaintiff's request for review, and adopted the ALJ's decision in full. (Tr. 1-6.)

## II. Evidence Before the ALJ

The Court adopts the statement of facts set forth in Plaintiff's statement of facts (ECF No. 12) and Defendant's response (ECF No. 15-1). Together, these statements provide a fair description of the record before the Court.

On May 7, 2024, Plaintiff testified before the ALJ. At the time of her testimony, she was 54 years old. Plaintiff's employment history includes a desk job in cost analysis for a bank, making candy in a candy store, and most recently, working in an office manager capacity for a plumbing company for more than ten years. (Tr. 35-39.) Her hours at the plumbing company were substantially reduced on or about April 28, 2023. (Tr. 40.) At the time of the hearing, Plaintiff worked two days per week for two to four hours per day. (Tr. 47.)

Since April 2023, she has experienced lower back pain, including nerve pain that runs down her right hip and right leg. She also experiences pain in her fused right SI joint and described the pain as sharp and stabbing. (Tr. 40.) Her back pain is a deep ache at best, and a right high, sharp, piercing pain at worst. (Tr. 41.) On a good day, her pain starts at a six out of ten and by end of the day is a seven. On a bad day, she wakes up at a seven or an eight, and when the pain reaches

a nine she gives up and takes meds and lies down. (Tr. 41.) She uses a pain management app on her phone to keep track of her pain levels at various times during the day, whether she took medicine and whether it improved the pain, and what she did that day. (Tr. 41-42.) She had a neurostimulator placed about five years ago. The stimulator helps control the nerve pain from around L4-5 and S-1, but not her right SI joint pain. (Tr. 42-43.)

Plaintiff testified that her pain management doctor told her she would be stuck at her then-current pain levels, and that she needed to see a behavioral health therapist to come to terms with being in chronic pain. (Tr. 43.) She has had four lower back surgeries, and the most recent one was a fusion in 2022. (Tr. 43-44.) Her back and leg pain is aggravated by sitting too long, standing too long, or walking too long. (Tr. 44.) The day of the hearing, she sat for about half an hour before she had to get up and move. (Tr. 44.) She sits learning forward because she can only sit straight up for about five minutes, then she gets a sharp pain in her right hip and leg. (Tr. 44.) If she stands for more than five minutes, she uses her cane to lean forward on the cane to get pressure off her lower back. (Tr. 45.) She cannot lift more than ten or fifteen pounds, but she can lift a gallon of milk. (Tr. 45.) Sometimes she can make the pain manageable by lying down, other times she has to take pain medication, like hydrocodone, oxycodone, Flexeril or a THC edible. (Tr. 44-45.) The pain medication affects her memory and her ability to focus. (Tr. 47.) Plaintiff estimated that between 9:00 am and 5:00 pm, she lies down three to four times, for 30 to 60 minutes each time. (Tr. 48.)

Plaintiff frequently uses a cane in her home to get pressure off her back. (Tr. 48-49.) She discussed it with her old pain management doctor who said the cane was worth a try, but he did not actually prescribe the cane. (Tr. 50.) She is currently being assessed for the need for a

wheelchair. (Tr. 48-49.) She lost 70 pounds in hopes that it would help manage the pain, then put 20 pounds back on. (Tr. 48.)

Plaintiff completed a Function Report dated October 16, 2023. (Tr. 206-213.) There, she wrote that working all day and sitting/standing became unbearable, and she needs to lay down throughout the day. She needs pain medication to get through work, but cannot take medication every day because it makes her drowsy, lethargic, confused, and affects her ability to concentrate. She does household chores including dusting and wiping down bathrooms and the kitchen, but does chores in thirty-minute intervals and lays down in between. When asked what she was able to do before her conditions that she cannot do now, she wrote work as a dive master, go up and down stairs, run errands, go out with friends in evening, cook dinners, work all day. Her pain keeps her up at night or wakes her up. She can bathe, use the toilet, dress herself, and blow dry her hair, but sometimes she cannot bend enough to shave her legs and sometimes needs help with getting pants on or off. She can feed herself and mostly prepares her own meals using food that doesn't require preparation because she cannot stand long enough without needing pain medication.

She works from 7 am to 11 am on Mondays and Thursdays, then she goes home to lie down for a couple hours, then gets up to make herself lunch. (Tr. 47.) She tries to get outside every day for sunshine and fresh air. Every week or two, Plaintiff goes out to eat or to the farmer's market. She drives, shops in stores, and goes grocery shopping. If she needs to take pain medication, someone else drives her. She reads and does brain games throughout the day. She scuba dives in the summer—the only time pain goes away. She used to dive every couple of weeks, but now cannot sit in the car without medication, so she can only go if someone else drivers her.

Where the report asks the claimant to check boxes for items that her illnesses, injuries, or conditions affect, Plaintiff checked lifting, squatting, bending, standing, walking, sitting kneeling,

stair climbing, and concentration. She can lift less than 10 pounds, sit for 20 minutes, needs help or to lean on a rail to use stairs. She can stand at most 30 minutes but then needs medication if she cannot lay down. If she has to kneel, squat, or bend, she needs help up. She can walk slowly for maybe 30 minutes before she needs to rest for at least 30 minutes.

Additional specific facts will be discussed as needed to address the parties' arguments.

## III. Standard for Determining Disability Under the Act

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the

applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

**IV. The ALJ's Decision**

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff met the insured status requirements through December 31, 2028, and she has not engaged in substantial gainful activity since the alleged onset date of April 12, 2023. (Tr. 16.) Next, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and status post remote fusion of L4-S1 in 2010, and sacroiliac joint fusion. (Tr. 17.)

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 17.) The ALJ also determined that Plaintiff had the residual functional capacity to perform light work[1] with the following additional limitations:

---

[1] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

> The claimant can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. She cannot balance on narrow, slippery, or erratically moving surfaces. She can engage in occasional stooping, crouching, and crawling and frequent kneeling. The clamant cannot work at unprotected heights or around hazardous machinery. She cannot perform work involving vibration, such as would be required by the operation of heavy equipment drills, jackhammers, or other such devices.

(Tr. 17-18.) The ALJ found that Plaintiff is capable of performing past relevant work as an Office Manager, as that work does not require the performance of work-related activities precluded by her residual functional capacity. (Tr. 22.) In the alternative to performing past relevant work, the ALJ found that based on Plaintiff's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 22-23.) These jobs include retail clerk (Dictionary of Occupational Titles (DOT) No. 299.677-010, light exertion level, SVP 2, approximately 4,000,000 jobs in the national economy), small product assembler (DOT No. 706.684-022, light, SVP 2, approximately 1,300,000 jobs in the national economy), and bakery worker (DOT No. 524.687-018, light, SVP 2, approximately 400,000 jobs in the national economy). (Tr. 23.) Therefore, the ALJ concluded that Plaintiff was not disabled, as defined in the Act, from April 12, 2023, through July 25, 2024. (Tr. 23-24.)

### V. Standard for Judicial Review

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether

it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## VI. Discussion

Plaintiff argues that the ALJ erred in two ways: 1) the ALJ failed to develop the record fully and fairly, and 2) the ALJ failed to properly evaluate credibility. Defendant responds that the ALJ complied with the applicable regulations and created an RFC that is supported by substantial evidence on the record as a whole.

**A. Development of the Record**

Plaintiff argues that the ALJ failed to fully and fairly develop the record, specifically with respect to the impact of the results of Plaintiff's February 8, 2024 CT of the lumbar spine. She argues the lack of medical opinion to translate the objective evidence into support for Plaintiff's ability to function in the workplace requires remand for further evaluation. The Commissioner counters that the ALJ specifically considered the CT and the record contained sufficient medical evidence for the ALJ to assess Plaintiff's RFC.

RFC is "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 404.1545. The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (alteration in original) (quoting *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015)).

"Ultimately, the RFC determination is a 'medical question' that 'must be supported by some medical evidence of [the plaintiff's] ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). *See also Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.") (quotation omitted). "Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional." *Williams v. Saul*, No. 2:19-CV-88 RLW, 2021 WL 1222770, at *10 (E.D. Mo. Mar. 31, 2021) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). An ALJ is not permitted to "draw his own inferences about [a] plaintiff's functional ability from medical reports." *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (citing *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003)).

On February 8, 2024, Plaintiff underwent a CT Myelogram of the lumbar spine. (Tr. 536-537.) The findings identified by Scott C. St. Amour, MD, were as follows:

> FINDINGS:
>
> The alignment is within normal limits.
>
> There is anterior plate and screw device at L4-5 and L5-S1.
>
> At the T12-L1 and L1-2 level, there is normal appearing thecal sac. The nerve roots fill normally. No central canal or neuroforaminal stenosis is identified.
>
> The L2-3 level demonstrates no abnormality. The nerve roots appear within normal limits.
>
> At the L4-5 level, the central canal appears within normal limits. There is some anteromedial spurring at the right-sided facet joint which causes some moderate neuroforaminal stenosis. The left-sided neuroforamen is widely patent.
>
> The L5-S1 level demonstrates no central canal or neuroforaminal stenosis.

(Tr. 537.) Based on the findings, Dr. St. Amour found "There is anteromedial spurring at the right-sided facet joint at L4-5 causing moderate neuroforaminal stenosis. The remaining neuroforamen throughout the lumbar spine as well as thecal sac appear within normal limits." (Tr. 537.)

In her decision, the ALJ summarized Plaintiff's testimony and medical records. (Tr. 18-20.) The ALJ acknowledged that the medical evidence documented Plaintiff's ongoing lower back, right hip, and right lower extremity symptoms with "extensive treatment including physical therapy, injections, and 4 surgeries, most recently in 2022." (Tr. 19.) The ALJ further explained that after the April 2022 fusion of her SI joint, Plaintiff reported that her SI joint pain resolved but she had an abundance of pain in the buttocks and left hamstring, and subsequent records documented ongoing complaints of right sacroiliac complaints with mild weakness of the right thigh and coldness of the right foot, as well as lumbosacral pain when standing for awhile. (Tr. 19.) The ALJ stated the RFC imposed "accommodates the claimant's spine and sacroiliac

impairments by limiting the claimant to a 'light' exertional level with the postural and environmental limitations set forth therein." (Tr. 19.) She stated the record does not provide a basis for a more limiting RFC because "treatment has been at least somewhat effective at improving at least some of her symptoms" and "imaging has revealed only **minimal** findings that are not consistent with her allegations regarding the intensity, frequency, and limiting effects of her symptoms." (Tr. 19 (emphasis added)). Later in the analysis, the ALJ repeatedly states "imaging has not revealed any evidence of neural compromise or more than **moderate** findings…" (Tr. 20, 21, 22 (emphasis added)).

It is unclear from the ALJ's analysis whether she found imaging to reveal only minimal or moderate findings. The medical opinions in the record support that the imaging has revealed only minimal findings, as the state agency physicians opined that "imaging shows mild stenosis and minimal degenerative changes," and "[w]hile it is reasonable to expect she does experience pain, the claimant would retain the capacity for work within the above guidelines [allowing for light work with additional restrictions]." (Tr. 65, 73.) However, the state agency physicians reviewed the record as it stood on or before November 6, 2023. (*See id.*) Therefore, these physicians did not review the February 8, 2024 lumbar CT myelogram revealing anteromedial spurring and moderate neuroforaminal stenosis. The ALJ acknowledges as much, finding the prior administrative medical findings contain sufficient support with extensive discussion of the evidence, but are only somewhat consistent with the overall record, which contains additional evidence received at the hearing level. (Tr. 21.)

"An ALJ does not automatically err by crediting a medical opinion that was rendered without the benefit of a claimant's full medical record." *Walker v. Kijakazi*, No. 6:21-CV-3235-NKL, 2022 WL 3036639, at *6 (W.D. Mo. Aug. 1, 2022) (*citing McCoy v. Saul*, No. 4:19-CV-

00704, 2020 WL 3412234, at *9 (W.D. Mo. June 22, 2020) (holding that ALJ did not err in finding medical consultant's opinion persuasive even though that opinion was reached before more than 300 pages of additional medical evidence had been adduced); *Kuikka v. Berryhill*, No. 17-cv-374, 2018 WL 1342482, at *10 (D. Minn. Mar. 15, 2018) ("[A]n ALJ may embrace a state agency psychological consultant's opinion even if it was made before the record was fully developed.") (internal citation omitted)). An ALJ may also find persuasive "the opinion of a state agency medical consultant who did not have access to all of the records, so long as the ALJ conducts an independent review of the evidence and takes into account portions of the record the consultant had not considered." *Kuikka,* 2018 WL 1342482, at *10. Further, "[t]he interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016).

Still, an ALJ cannot "play doctor," meaning that an ALJ cannot draw improper inferences from the record or substitute a doctor's opinion for his own. *See Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009) ("[T]he ALJ's determination [that the claimant's] medical noncompliance is attributable solely to free will is tantamount to the ALJ 'playing doctor,' a practice forbidden by law."); *see also Adamczyk v. Saul*, 817 F. App'x 287, 289 (8th Cir. 2020) (per curiam) ("[T]he ALJ cannot 'play doctor,' meaning that the ALJ cannot draw improper inferences from the record or substitute a doctor's opinion for his own."). Moreover, the ALJ "may not simply draw his own inferences about plaintiff's functional ability from medical reports." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (citation modified).

"The Eighth Circuit has held that, in some cases, mild or unremarkable objective medical findings and other evidence may constitute sufficient medical support for an RFC finding, even in the absence of any medical opinion evidence directly addressing [the plaintiff's] ability to function

in the workplace." *Massa v. Saul*, No. 4:18-CV-877 SPM, 2019 WL 4305010, at *5 (E.D. Mo. Sep. 11, 2019) (citing *Stringer v. Berryhill*, 700 F. App'x 566, 567 (8th Cir. 2017) and *Hensley*, 829 F.3d at 929-34). In this case, however, the record does not contain consistently mild or unremarkable objective findings. The prior administrative medical findings characterizing the imaging findings as "mild stenosis" and "minimal degenerative changes" do not take into account the moderate neuroforaminal stenosis in the February 2024 CT. Nevertheless, the ALJ explicitly relies on the February 2024 CT as an "example" of imaging revealing only minimal findings inconsistent with her allegations regarding the intensity, frequency, and limiting effects of her symptoms. (Tr. 19.) Further, the physician who interpreted the February 2024 CT did not have prior imaging for comparison, and there is no medical comparison evidence indicating whether Plaintiff's condition deteriorated since past imaging was conducted. (Tr. 356.) In light of the 2024 CT results referencing "moderate" neuroforaminal stenosis, and the ALJ's inconsistent statements that imaging "revealed only minimal findings" and imaging "revealed no more than moderate findings," it is difficult to determine how the ALJ considered the more recent imaging results and whether the RFC imposed by the ALJ is based on substantial evidence. Furthermore, Plaintiff received additional treatment in 2024 following the imaging, she consistently reported pain to her providers, saw a pain management specialist, underwent multiple steroid injections, and took narcotic and non-narcotic pain medications. Under the circumstances, when evaluating Plaintiff's RFC, the ALJ "was required to consider at least some supporting evidence from a professional." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). *See also Noerper*, 964 F.3d at 746 ("There is simply no reliable evidence providing a basis for the specific conclusion that" the plaintiff could perform the functions required by light work.); *Colleen J. v. Bisignano*, No. 25-CV-01195 (DSD/ECW), 2026 WL 207218, at *12 (D. Minn. Jan. 20, 2026), *report and recommendation*

*adopted,* No. 25-1195 (DSD/ECW), 2026 WL 209835 (D. Minn. Jan. 27, 2026) ("the ALJ cannot draw his own inferences as to Plaintiff's functional capacity from such complex medical reports as a spinal MRI."); *Caito v. Saul*, No. 4:20-CV-1727 SRW, 2022 WL 522898, at *9 (E.D. Mo. Feb. 22, 2022) ("as to the ALJ's summary of Plaintiff's updated 2019 MRI results, the Court notes these records contain highly technical medical terminology, and the record does not contain any explanation from a physician as to how the impressions may cause physical limitations or affect her ability to maintain employment."); *Priddy v. Saul*, 4:19-cv-945-RLW, 2020 WL 7024237, *9 ("By relying on his own interpretation of what 'normal gait and station' and 'normal tone and no atrophy' meant in terms of [the plaintiff's] RFC, without medical evidence as [to the plaintiff's] functional ability, 'the ALJ failed to satisfy his duty to fully and fairly develop the record.'").

Upon review, the Court finds that the record is underdeveloped in that there is no medical evidence addressing how the results of Plaintiff's February 2024 imaging impact her ability to work.[2] On remand, the ALJ may need to further develop the record regarding Plaintiff's ability to function.

## VII. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **GRANTED**. (ECF No. 1, 11.)

[2] Because the Court finds that the record was not fully and fairly developed, the Court does not consider Plaintiff's claim that the ALJ erred in her evaluation of Plaintiff's subjective complaints.

**IT IS FURTHER ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further proceedings consistent with this opinion. An order of remand shall accompany this memorandum and order.

Dated this 23rd day of September, 2026.

RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE